FILED
2017 Jun-22  AM 11:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

ROP/GAM/RBM: July 2017

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs | ) |
| | ) |
| OLIVER L. ROBINSON, JR., | ) |
| Defendant. | ) |

## INFORMATION

The Acting United States Attorney charges:

## Introduction

At all times material to this Information:

## Oliver L. Robinson, Jr., and his Entities

1.  Defendant **OLIVER L. ROBINSON, JR.,** was a member of the Alabama House of Representatives from 1998 until his resignation on or about November 30, 2016.   He represented District 58 and served as Vice-Chairman of the Jefferson County Legislative Delegation.     Defendant **OLIVER L. ROBINSON, JR.,** was an agent of the State of Alabama, a state government that received in excess of $10,000.00 under a Federal program involving a grant,

1

contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance during each year material to this Information.

2.   Based on his position as a member of the Alabama House of Representatives, defendant **OLIVER L. ROBINSON, JR.,** owed a duty of loyalty and honesty to the State of Alabama and its citizens, free from deceit, self-enrichment, concealment, and conflicts of interests between his private interests and the official responsibilities inherent in his office of public trust.   Specifically, as an elected official of the State of Alabama, defendant **OLIVER L. ROBINSON, JR.,** owed the State of Alabama and its citizens a duty to, among other things: (a) refrain from using his official position or office to obtain personal gain for himself or a family member, pursuant to Ala. Code § 36-25-5(a); (b) refrain from soliciting or receiving anything for himself or family member for the purpose of corruptly influencing official action, pursuant to Ala. Code § 36-25-7(b); (c) refrain from representing a paying client before any branch of state government or any board, agency, commission or department thereof, pursuant to Ala. Code § 36-25-23(a); (d) refrain from soliciting any lobbyist to give anything to any person or entity, pursuant to Ala. Code § 36-25-23(c); and (e) disclose, and not conceal, personal financial interests, the nature and amount of income received, and other material financial information, pursuant to Ala. Code § 36-25-14.

2

3.   To finance his campaigns for office, defendant **OLIVER L. ROBINSON, JR.,** solicited and accepted contributions from individuals, corporations, and political action committees.   The campaign contributions to defendant **OLIVER L. ROBINSON, JR.,** could not lawfully be converted by him to personal use.   He controlled the bank accounts into which campaign contributions were deposited.

4.   In or about August 2004, defendant **OLIVER L. ROBINSON, JR.,** established the Oliver Robinson Foundation and served as its President.   The stated purpose of the Oliver Robinson Foundation was to raise funds to advance financial literacy among students at high schools and Historically Black Colleges and Universities through publications and presentations.   Defendant **OLIVER L. ROBINSON, JR.,** used the Oliver Robinson Foundation to raise money to fund an annual Black Achievers Awards Gala in Birmingham, Alabama, and to publish a magazine called The Community Reinvestor Magazine.   In or about March 2005, the Oliver Robinson Foundation's application for tax-exempt status under section 501(c)(3) of the Internal Revenue Code was approved.   Defendant **OLIVER L. ROBINSON, JR.,** controlled the bank account opened in the name of the Oliver Robinson Foundation.

5.    Defendant **OLIVER L. ROBINSON, JR.,** also founded Robinson &
Robinson Communications, LLC in or about 2001 and served as its President.
This entity was formed to "produce, record, promote, market, and sell compact
discs and cassette tapes."   Defendant **OLIVER L. ROBINSON, JR.,** controlled
the bank account opened in the name of this business.

6.    Partnering for Progress was an entity established in 2009 by defendant
**OLIVER L. ROBINSON, JR.,** and another individual to organize an annual
business conference.   Defendant **OLIVER L. ROBINSON, JR.,** and others asked
corporations to sponsor the conferences by contributing money to Partnering for
Progress.   Defendant **OLIVER L. ROBINSON, JR.,** continued to control a
Partnering for Progress bank account despite having his name removed as an
authorized signatory on the account in 2009.

### Environmental Issues in North Birmingham

7.    The United States Environmental Protection Agency ("EPA") is the
federal agency charged with the mission of ensuring that all Americans are
protected from significant risks to the environment and human health where they
live, learn, and work.   EPA designated an area of north Birmingham, Alabama,
including the neighborhoods of Harriman Park, Fairmont, and Collegeville, as the
35th Avenue Superfund Site based on elevated levels of arsenic, lead, and

benzo(a)pyrene found during soil sampling.   In September 2013, EPA sent general notice letters to five companies potentially responsible for the pollution in north Birmingham, including ABC Coke, a division of Drummond Company.   A company determined to be responsible for pollution within the 35th Avenue Superfund Site could have faced tens of millions of dollars in cleanup costs and fines.

8.   In July 2014, EPA began considering a petition filed by GASP, a Birmingham, Alabama, environmental advocacy group, to expand the 35th Avenue Superfund Site into the Tarrant and Inglenook areas of north Birmingham and to conduct a preliminary assessment of pollutants allegedly deposited there by ABC Coke and others.   On October 9, 2014, EPA granted the petition and contracted with the Alabama Department of Environmental Management ("ADEM") to perform the preliminary assessment.

9.   ADEM is the state agency responsible for the implementation of environmental programs and policies, including administering federally approved or delegated environmental programs.   It receives substantial funding from the federal government and is included in the State of Alabama's annual general fund budget approved by the legislature and Governor.   The Alabama Environmental Management Commission ("AEMC") is the state commission responsible for

developing environmental policy for the State of Alabama, selecting the ADEM

Director, and advising the ADEM Director on environmental matters.   AEMC

holds periodic public meetings and, among other matters, considers comments from

interested parties on issues involving the State of Alabama's environmental policy.

10.   In September 2014, EPA proposed adding the 35th Avenue Superfund

Site to the National Priorities List, a listing of the nation's Superfund Sites

requiring priority attention.   Placement on the National Priority List would have

allowed EPA to use the federal Superfund Trust Fund to conduct long-term

remedial actions at the 35th Avenue Superfund Site provided the State of Alabama

agreed to fund ten percent of the costs incurred during cleanup of the site.   The

contribution required from the State of Alabama would have been millions of

dollars.   A listing on the National Priorities List would have allowed cleanup of the

Site to proceed even if EPA was unable to persuade or compel a potentially

responsible party to conduct or fund the cleanup.   EPA and the State of Alabama

could attempt later to recover money spent by the federal and state governments as

part of the cleanup from companies determined to be responsible parties through

negotiation and/or litigation.

11.   The Governor of Alabama designated ADEM as the State of Alabama's

representative on issues concerning the potential listing of the 35th Avenue

Superfund Site on the National Priorities List and the expansion of the 35th Avenue

Superfund Site into the Tarrant and Inglenook communities.

12.    EPA held a public comment period on the proposed listing of the 35th

Avenue Superfund Site on the National Priorities List from September 22, 2014, to

January 22, 2015.   In January 2015, ADEM, acting on behalf of the State of

Alabama, requested that EPA's proposal be withdrawn and no further action taken

until issues raised by the State could be resolved.   ADEM stated that if the issues

could not be resolved the State of Alabama would request review pursuant to EPA's

formal issue resolution process.   After considering all comments, if EPA

concluded that the 35th Avenue Superfund Site qualified for listing on the National

Priorities List, EPA would consult with ADEM and, if necessary, follow the formal

issue resolution process prior to making a final decision.   EPA's review of the

proposed listing on the National Priorities List continued into 2016.

13.    Drummond Company and ABC Coke were represented by Balch &

Bingham, a Birmingham, Alabama, law firm, in relation to EPA's actions in north

Birmingham.   Attorney #1 was a Balch & Bingham partner coordinating the

response to EPA's actions on behalf of ABC Coke and Drummond Company.

Drummond Employee #1 was a Drummond Company employee involved with

Attorney #1 in responding to EPA.   Both Attorney #1 and Drummond Employee

7

#1 were registered with the State of Alabama as lobbyists.

14.   Beginning in or about 2014, and continuing until at least November 2016, the strategy employed by Attorney #1 and Drummond Employee #1 focused on protecting ABC Coke and Drummond Company from the tremendous potential costs associated with being held responsible for pollution within the affected areas. They sought to accomplish this goal by working to prevent EPA from listing the 35th Avenue Superfund Site on the National Priorities List and expanding the Superfund site into Tarrant and Inglenook.   The plan included advising residents of north Birmingham and public officials to oppose EPA's actions.   As part of the overall strategy, Balch & Bingham paid defendant **OLIVER L. ROBINSON, JR.,** through his foundation, to represent Balch & Bingham's and its clients' interests exclusively in matters related to EPA's actions in north Birmingham.   One of defendant **OLIVER L. ROBINSON, JR.'s,** first tasks in furtherance of this strategy was to appear before AEMC and the ADEM Director to advance the opposition of Balch & Bingham and its clients to EPA's actions in north Birmingham.

15.   In 2015, Attorney #1 and Drummond Employee #1 formed a tax-exempt corporation named Alliance for Jobs and the Economy and recruited corporations to contribute money to the Alliance for Jobs and the Economy to help

fund opposition to EPA's actions in north Birmingham.   Drummond Company and several other corporations contributed money to the Alliance for Jobs and the Economy at the request of Attorney #1 and Drummond Employee #1.   Drummond Employee #1 opened and controlled a bank account in the name of the Alliance for Jobs and the Economy.

### Count One
### Conspiracy
### Title 18, United States Code, Section 371

16.    The allegations in paragraphs 1 through 15 of this Information are realleged as though fully set forth herein.

### THE CONSPIRACY

17.    From in or about November 2014, and continuing until in or about November 2016, the exact dates being unknown, within Jefferson County in the Northern District of Alabama, and elsewhere, defendant

### OLIVER L. ROBINSON, JR.,

knowingly and willfully conspired, combined, and agreed with Attorney #1, Drummond Employee #1, and others known and unknown to:

(a)    solicit, demand, accept and agree to accept anything of value from any person intending to be influenced or rewarded in connection with any business, transaction or series of transactions of the State of Alabama involving anything of value of $5,000.00 or more, in violation of Title 18, United States Code, Section 666(a)(1)(B);

9

(b)   give, offer, and agree to give anything of value to any person intending to influence or reward an agent of the State of Alabama in connection with any business, transaction, or series of transactions of the State of Alabama, involving anything of value of $5,000.00 or more, in violation of Title 18, United States Code, Section 666(a)(2); and

(c)   devise and intend to devise a scheme and artifice to defraud the State of Alabama and its citizens of their intangible right to defendant **OLIVER L. ROBINSON, JR.'S,** honest services through bribery by use of interstate wire transmissions, in violation of Title 18, United States Code, Sections 1343 and 1346.

## MANNER AND MEANS OF THE CONSPIRACY

18.   It was a part of the conspiracy that defendant **OLIVER L. ROBINSON, JR.,** Attorney #1, and Drummond Employee #1 would and did agree that defendant **OLIVER L. ROBINSON, JR.,** would be paid, through the Oliver Robinson Foundation, to represent Balch & Bingham's and its clients' interests exclusively in relation to the environmental issues in north Birmingham despite defendant **OLIVER L. ROBINSON, JR.'s** duty to honestly, openly, and fairly represent the State of Alabama and the citizens and residents of Birmingham.

19.   It was a further part of the conspiracy that defendant **OLIVER L. ROBINSON, JR.,** Attorney #1, and Drummond Employee #1 would and did agree that defendant **OLIVER L. ROBINSON, JR.,** would be paid, through the Oliver Robinson Foundation, to use his position as a member of the Alabama House of

Representatives, Vice-Chairman of the Jefferson County Legislative Delegation, and elected representative of citizens of Birmingham to pressure and advise public officials to oppose EPA's actions in north Birmingham.

20.    It was a further part of the conspiracy that defendant **OLIVER L. ROBINSON, JR.,** Attorney #1, and Drummond Employee #1 would and did agree that defendant **OLIVER L. ROBINSON, JR.,** would appear before AEMC on February 20, 2015, to advance the opposition of Balch & Bingham and its clients to EPA's actions in north Birmingham by using his official position to pressure and advise AEMC and the ADEM Director to take and maintain a position on behalf of the State of Alabama favorable to Balch and Bingham and its clients in relation to EPA's efforts to list the 35th Avenue Superfund Site on the National Priorities List and expand the Superfund Site into Tarrant and Inglenook.

21.    It was a further part of the conspiracy that Attorney #1 would and did write letters that defendant **OLIVER L. ROBINSON, JR.,** would and did print verbatim on his official Alabama House of Representatives letterhead and sign before delivering to members of the AEMC and ADEM Director.

22.    It was a further part of the conspiracy that Attorney #1 would and did offer, and defendant **OLIVER L. ROBINSON, JR.,** would and did accept, a contract between Balch & Bingham and the Oliver Robinson Foundation to

influence and reward defendant **OLIVER L. ROBINSON, JR.,** in connection with the use of his position as a member of the Alabama House of Representatives in support of Balch & Bingham's and its clients' opposition to EPA's actions in north Birmingham.

23.   It was a further part of the conspiracy that, four days prior to defendant **OLIVER L. ROBINSON, JR.'S,** appearance before AEMC in February 2015, he and Attorney #1 would and did sign the contract between the Oliver Robinson Foundation and Balch & Bingham.

24.   It was a further part of the conspiracy that the Oliver Robinson Foundation would and did submit invoices each month to Balch & Bingham under the contract and the law firm would pay those invoices.

25.   It was a further part of the conspiracy that Balch & Bingham would and did submit invoices to Drummond Company and the Alliance for Jobs and the Economy in identical amounts Balch & Bingham paid to the Oliver Robinson Foundation.   Drummond Employee #1 would cause either Drummond Company or the Alliance for Jobs and the Economy to send payment to Balch & Bingham on those invoices.   All of the money contributed to the Alliance for Jobs and the Economy was used by Drummond Employee #1 to pay Balch & Bingham on the invoices related to the Oliver Robinson Foundation.

26.   It was a further part of the conspiracy that, eight days prior to the AEMC meeting in February 2015, Balch & Bingham would and did pay the Oliver Robinson Foundation $14,000.00 as the first payment under the contract.

27.   It was a further part of the conspiracy that, on the same day it paid $14,000.00 to the Oliver Robinson Foundation, Balch & Bingham would and did send an invoice in an identical amount to Drummond Company, which Drummond Company promptly paid.

28.   It was a further part of the conspiracy that Balch & Bingham, Drummond Company, and the Alliance for Jobs and the Economy would and did pay the Oliver Robinson Foundation a total of approximately $360,000.00 under the contract during 2015 and 2016.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the objects thereof, the conspirators committed and caused to be committed the following overt acts, among others, in the Northern District of Alabama and elsewhere:

29.   In or about November 2014, Attorney #1 and Drummond Employee #1 engaged in discussions with defendant **OLIVER L. ROBINSON, JR.,** regarding a contract between Balch & Bingham and one of defendant **OLIVER L. ROBINSON, JR.'s** organizations.   The conspirators discussed that defendant

**OLIVER L. ROBINSON, JR.,** would appear before the AEMC to advance Balch & Bingham's and its clients' opposition to EPA's proposed actions by advising the AEMC to take a position favorable to Balch & Bingham and its clients.   Defendant **OLIVER L. ROBINSON, JR.,** subsequently (in February 2015) agreed to appear before the AEMC as requested.

30.   On or about December 11, 2014, defendant **OLIVER L. ROBINSON, JR.,** sent an email to Attorney #1 stating: "[Attorney #1] go back to [Drummond Employee #1] and the Drummond people and let them know that we will need $7000 per month."   Attorney #1 forwarded this email to Drummond Employee #1.

31.   On or about December 12, 2014, defendant **OLIVER L. ROBINSON, JR.,** met with representatives of EPA to discuss issues related to north Birmingham. Attorney #1 provided defendant **OLIVER L. ROBINSON, JR.,** a list of talking points consistent with Balch & Bingham's and its clients' position to guide the meeting and instructed him to secretly record the meeting.   Defendant **OLIVER L. ROBINSON, JR.,** did not reveal to EPA that he was in contract negotiations with Balch & Bingham to represent Balch & Bingham's and its clients' interests in relation to the environmental issues in north Birmingham that were the subject of the meeting.

14

32.   On or about December 23, 2014, defendant **OLIVER L. ROBINSON, JR.,** met with representatives of GASP to discuss issues related to north Birmingham.   Attorney #1 provided defendant **OLIVER L. ROBINSON, JR.,** a list of talking points consistent with Balch & Bingham's and its clients' position to guide the meeting and instructed him to secretly record the meeting.   Defendant **OLIVER L. ROBINSON, JR.,** did not reveal to GASP that he was in contract negotiations with Balch & Bingham to represent Balch & Bingham's and its clients' interests in relation to the environmental issues in north Birmingham that were the subject of the meeting.

33.   On or about February 6, 2015, Attorney #1 approved a letter he instructed an associate to write for defendant **OLIVER L. ROBINSON, JR.,** to sign requesting permission from the AEMC Chairman for defendant **OLIVER L. ROBINSON, JR.,** to appear before the regularly scheduled Commission meeting on February 20, 2015, "on behalf of the concerned citizens working and residing in North Birmingham."   The letter stated: "As a state legislator and representative of a district adjacent to the North Birmingham superfund site, it is my duty to ensure that the North Birmingham community is adequately represented to relevant State organizations such as AEMC.   The health and general welfare of our community depends, in large part, on AEMC's continued willingness to hear and actively

15

engage in matters that are critically important to them.   The NPL proposal is one

such matter."   The letter did not reveal to AEMC that the Oliver Robinson

Foundation was being paid to represent the exclusive interests of Balch & Bingham

and its clients.   After defendant **OLIVER L. ROBINSON, JR.,** printed the letter

on his official Alabama House of Representatives letterhead and signed it, he had it

delivered to the AEMC Chairman.

34.   On February 6, 2015, Attorney #1 forwarded a draft of this letter to

Drummond Employee #1 in an email that stated: "[Drummond Employee #1] – met

with Oliver.   He has agreed to submit the request to AEMC today to meet the

deadline.   However, he said he needed to think about the politics of it before he

would commit to providing comments to the AEMC.   I told him I understood and

he could always withdraw the request should he decide not to do it.   Maybe helpful

if you followed up with him on this issue.   Thanks."

35.   On or about February 12, 2015, Balch & Bingham paid the Oliver

Robinson Foundation $14,000.00.   On or about that same day, Balch & Bingham

sent an invoice in an identical amount to Drummond Company.

36.   On or about February 16, 2015, four days before the AEMC meeting,

and four days after the first payment, Attorney #1 and defendant **OLIVER L.**

**ROBINSON, JR.,** signed a contract between Balch & Bingham and the Oliver

Robinson Foundation.   The contract, which was written and approved by Attorney #1, provided that the Oliver Robinson Foundation could not "directly or indirectly engage or be concerned or interested in any business or activity which conflicts with its services to Balch or otherwise conflicts with the interests of Balch as determined solely by Balch."   The contract stated that the effective date of the contract was December 1, 2014.

37.   On or about February 17, 2015, Drummond Company paid Balch & Bingham $14,000.00, the identical amount Balch & Bingham paid to the Oliver Robinson Foundation.

38.   In or about February 2015, defendant **OLIVER L. ROBINSON, JR.,** agreed with Attorney #1 and Drummond Employee #1 to meet with two members of the AEMC prior to his appearance before the full Commission.

39.   On February 20, 2015, defendant **OLIVER L. ROBINSON, JR.,** appeared before the AEMC "to protect the residents of north Birmingham."   He told AEMC that calls from constituents led him, "as the vice chairman of the Jefferson County House delegation, to do some research on the Superfund designations and the NPL listings and to look at the North Birmingham 35th Avenue area location with some fervor."   He advised further that he had "yet to see any information that shows me that this area should be designated as a Superfund site,

17

not to mention being put on the NPL listing."   After stating that he was "really here today to try to protect the residents of north Birmingham," defendant **OLIVER L. ROBINSON, JR.,** advised that "the thing that gets me and what is in the process of hurting the residents in that area is that the EPA has included five other corporations in on this process, but there have been no reports stating that these individuals are culpable in any way.   And where that hurts the residents is the fact that we will have decades of litigation that will occur because of these five companies being added."   He asked the AEMC to help narrow the list of potentially responsible parties if there were no reports or tests implicating the corporations.   Concluding, defendant **OLIVER L. ROBINSON, JR.,** advised AEMC that if the areas of north Birmingham are designated as a Superfund site or listed on the NPL, the residents are "considered to live in a dump and nothing can happen there until it's either cleaned up and after that, it will take tremendous investment to get it to move forward."   Defendant **OLIVER L. ROBINSON, JR.,** concealed from AEMC that the Oliver Robinson Foundation was being paid to represent the exclusive interests of Balch & Bingham and its clients.   The ADEM Director, who was present during the AEMC meeting, later cited to senior EPA officials defendant **OLIVER L. ROBINSON, JR.'s,** public opposition to the listing of the 35th Avenue Superfund Site on the National Priorities List.

40.   On or about March 4, 2015, Attorney #1 wrote a second letter for defendant **OLIVER L. ROBINSON, JR.,** to sign requesting information from the ADEM Director so that defendant **OLIVER L. ROBINSON, JR.,** could "better serve my constituents."   This letter was delivered to the ADEM Director and each member of the AEMC after defendant **OLIVER L. ROBINSON, JR.,** printed it on his official Alabama House of Representatives letterhead and signed it.   Neither defendant **OLIVER L. ROBINSON, JR.,** nor Attorney #1 revealed that the Oliver Robinson Foundation was being paid to represent the exclusive interests of Balch & Bingham and its clients.

41.   In or about May 2015, Attorney #1 wrote a Joint Resolution for consideration by the Alabama Senate and Alabama House of Representatives urging "the Attorney General and ADEM to combat the EPA's overreach."   After the resolution was submitted to and adopted by the Alabama Senate, defendant **OLIVER L. ROBINSON, JR.,** then a member of the Alabama House of Representatives' Rules Committee, voted in committee to send the resolution to the floor of the House of Representatives for consideration by the membership of the House.

42.   During 2015 and 2016, pursuant to the contract between Balch & Bingham and the Oliver Robinson Foundation, defendant **OLIVER L. ROBINSON, JR.,** through other individuals, communicated Balch & Bingham's and its clients' opposition to EPA's actions to the residents of north Birmingham as directed by Attorney #1 and Drummond Employee #1.   The Oliver Robinson Foundation communicated with the residents through an organization formed for that purpose called Get Smart Tarrant.

All in violation of Title 18, United States Code, Section 371.

## Count Two
## Bribery
## Title 18, United States Code, Sections 666(a)(1)(B) and 2

43.   The factual allegations in paragraphs 1 through 42 of this Information are realleged as though fully set forth herein.

44.   On or about February 16, 2015, within Jefferson County in the Northern District of Alabama, and elsewhere, defendant

## OLIVER L. ROBINSON, JR.,

being an agent of the State of Alabama, a state government that received in excess of $10,000.00 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance during a one year period, aided and abetted by Attorney #1 and Drummond Employee #1, did corruptly

20

solicit, demand, accept, and agree to accept a thing of value from any person,

intending to be influenced and rewarded in connection with a transaction and series

of transactions of the State of Alabama involving $5,000.00 and more; that is,

defendant **OLIVER L. ROBINSON, JR.,** solicited, demanded, accepted, and

agreed to accept the contract with Balch & Bingham intending to be influenced and

rewarded for using his official position to pressure and advise AEMC and the

ADEM Director to take and maintain a position on behalf of the State of Alabama

favorable to Balch & Bingham and its clients in relation to EPA's efforts to list the

35th Avenue Superfund Site on the National Priorities List and expand the

Superfund Site into Tarrant and Inglenook.

All in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

### Count Three
### Honest Services Wire Fraud
### Title 18, United States Code, Sections 1343, 1346, and 2

45.    The factual allegations in paragraphs 1 through 42 of this Information

are realleged as though fully set forth herein.

46.    From in or about November 2014, and continuing to on or about

November 30, 2016, the exact dates being unknown, within Jefferson County in the

Northern District of Alabama, and elsewhere, defendant

**OLIVER L. ROBINSON, JR.,**

aided and abetted by Attorney #1 and Drummond Employee #1, devised and intended to devise a scheme and artifice to defraud the State of Alabama and its citizens of their intangible right to defendant **OLIVER L. ROBINSON, JR.'S,** honest services through bribery.

## Purpose of the Scheme and Artifice

47.   The purpose of the scheme and artifice to defraud is set out in paragraphs 18 through 28 of this Information.   Paragraph 18 is hereby incorporated by reference as though fully set forth herein, with the words "It was part of the scheme and artifice" replacing "It was part of the conspiracy."   Paragraphs 19 through 28 are hereby incorporated by reference as though fully set forth herein, with the words "It was a further part of the scheme and artifice" replacing "It was a further part of the conspiracy" at the start of each paragraph.

## The Wire Communication

48.   On or about February 17, 2015, in Jefferson County in the Northern District of Alabama, and elsewhere, defendant

**OLIVER L. ROBINSON, JR.,**

for the purpose of executing the above-described scheme and artifice to defraud and attempting to do so, did cause to be transmitted in interstate commerce, by means of

a wire communication, certain signs and signals, that is, defendant **OLIVER L. ROBINSON, JR.,** caused an interstate communication between Alabama and another state when Balch & Bingham check number 402024 payable to the Oliver Robinson Foundation in the amount of $14,000.00 was deposited into the Oliver Robinson Foundation account at Regions Bank.

All in violation of Title 18, United States Code, Sections 1343, 1346, and 2.

**Counts Four and Five**
**Wire Fraud**
**Title 18, United States Code, Section 1343**

49.   The factual allegations in paragraphs 1 through 42 of this Information are realleged as though fully set forth herein.

50.   From in or about January 2010, and continuing to in or about December 2015, the exact dates being unknown, within Jefferson County in the Northern District of Alabama, and elsewhere, defendant

**OLIVER L. ROBINSON, JR.,**

devised and intended to devise a scheme and artifice to defraud contributors to his campaigns, and to obtain money and property belonging to contributors to his campaigns, by means of materially false and fraudulent pretenses, representations, and promises.

23

## Purpose of the Scheme and Artifice

51.   It was a part of the scheme and artifice that defendant **OLIVER L. ROBINSON, JR.,** would and did solicit contributions to his campaigns from individuals, corporations, and political action committees by representing that all contributions would be used for lawful purposes associated with his campaigns for election to the Alabama House of Representatives.

52.   It was a further part of the scheme and artifice that defendant **OLIVER L. ROBINSON, JR.,** would and did accept campaign contributions from individuals, corporations, and political action committees and deposit those funds into accounts he controlled at Regions Bank.

53.   It was a further part of the scheme and artifice that defendant **OLIVER L. ROBINSON, JR.,** would and did spend approximately $17,783.00 of campaign contributions on personal items unrelated to his campaigns for public office.

## The Wire Communications

54.    On or about the date listed below for each count, in Jefferson County in the Northern District of Alabama, and elsewhere, defendant

**OLIVER L. ROBINSON, JR.,**

for the purpose of executing the above-described scheme and artifice and attempting to do so, did cause to be transmitted in interstate commerce, by means of

a wire communication, certain signs and signals, that is, defendant **OLIVER L. ROBINSON, JR.,** caused an interstate communication between Alabama and another state when he used a debit card associated with one of his campaign accounts to make each purchase described below.

55.    The allegations of paragraphs 49 through 54 of this Information are realleged for each of counts 4 and 5 as though fully set forth therein.

| COUNT | DATE OF PURCHASE | MERCHANT | AMOUNT |
|:-----:|:----------------:|:---------|:------:|
| 4 | December 23, 2013 | Saks Fifth Avenue | $2,024.00 |
| 5 | February 11, 2014 | Victoria's Secret | $400.00 |

All in violation of Title 18, United States Code, Section 1343.

**Count Six**
**Wire Fraud**
**Title 18, United States Code, Sections 1343 and 2**

56.    The factual allegations in paragraphs 1 through 42 of this Information are realleged as though fully set forth herein.

57.    From in or about January 2010, and continuing to in or about December 2016, the exact dates being unknown, within Jefferson County in the Northern District of Alabama, and elsewhere, defendant

25

**OLIVER L. ROBINSON, JR.,**

aided and abetted by others known and unknown, devised and intended to devise a

scheme and artifice to defraud various corporations doing business in Alabama, and

to obtain money and property belonging to those corporations, by means of

materially false and fraudulent pretenses, representations, and promises.

## Purpose of the Scheme and Artifice

58.   It was a part of the scheme and artifice that defendant **OLIVER L.**

**ROBINSON, JR.,** and others would and did solicit money from corporations by

representing that all contributions would be used to publish The Community

Reinvestor Magazine, or to defray costs associated with the annual Partnering for

Progress Business Conference or the annual Alabama Black Achievers Awards

Gala sponsored by the Oliver Robinson Foundation.

59.   It was a further part of the scheme and artifice that defendant **OLIVER**

**L. ROBINSON, JR.,** and others would and did accept hundreds of thousands of

dollars in contributions from corporations for the magazine and these events and

deposit those funds into various bank accounts he controlled.

60.   It was a further part of the scheme and artifice that defendant **OLIVER**

**L. ROBINSON, JR.,** would and did spend at least $250,000.00 of the contributions

on personal items unrelated to the magazine, business conferences or galas and

conceal his personal spending from contributors.   Defendant **OLIVER L. ROBINSON, JR.,** would often accomplish this scheme by purchasing personal items and services using an American Express or Chase Bank credit card and then paying the credit card bills with money contributed to Partnering for Progress and the Oliver Robinson Foundation for the magazine, business conferences, and galas.

## The Wire Communication

61.   On or about June 4, 2014, in Jefferson County in the Northern District of Alabama, and elsewhere, defendant

### OLIVER L. ROBINSON, JR.,

for the purpose of executing the above-described scheme and artifice to defraud and attempting to do so, did cause to be transmitted in interstate commerce, by means of a wire communication, certain signs and signals, that is, defendant **OLIVER L. ROBINSON, JR.,** caused an interstate communication between Alabama and another state when he transferred funds from the Oliver Robinson Foundation bank account to make an online payment of $5,714.54 to Chase Bank.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## Count Seven
## Tax Evasion
## Title 26, United States Code, Section 7201

62.   The factual allegations in paragraphs 1 through 61 of this Information are realleged as though fully set forth herein.

63.   On or about April 18, 2016, within Jefferson County in the Northern District of Alabama, and elsewhere, defendant

### OLIVER L. ROBINSON, JR.,

a resident of Birmingham, Alabama, willfully attempted to evade and defeat the payment of income tax due and owing by him to the United States of America, for the calendar year 2015, by committing the following affirmative acts, among others:

a.   Preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, which was submitted to the Internal Revenue Service;

b.   Failing to provide complete and accurate records to his return preparer;

c.   Directing Balch & Bingham and others to make payments to the Oliver Robinson Foundation, a tax-exempt entity, rather than to defendant **OLIVER L. ROBINSON, JR.,** personally or to Robinson & Robinson Communications;

d.   Transferring funds between multiple accounts and entities to conceal the

source of the funds and that the funds were subject to taxation; and

e.   Continuing to exercise authority over and use a Partnering for Progress

bank account after removing himself as an authorized signatory.

All in violation of Title 26, United States Code, Section 7201.

## NOTICE OF FORFEITURE
## 18 U.S.C. § 982(a)(2)(A)

64.   The allegations contained in Counts One through Six of this

Information are hereby realleged and incorporated by reference for the purpose of

alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2)(A).

65.   Pursuant to Title 18, United States Code, Section 982(a)(2)(A), upon

conviction of a conspiracy to violate Title 18, United States Code, Section 666, in

violation of Title 18, United States Code, Section 371; bribery, in violation of Title

18, United States Code, Section 666; and wire fraud, in violation of Title 18, United

States Code, Sections 1343 and 1346; the defendant,

**OLIVER L. ROBINSON, JR.,**

shall forfeit to the United States of America any property constituting, or derived

from, proceeds he obtained directly or indirectly, as the result of such violation.

The property to be forfeited includes, but is not limited to, the following: a money

judgment in an amount of no more than $767,783.00.

66.   If any of the property described above, as a result of any act or omission of the defendant:

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third party;

   c.   has been placed beyond the jurisdiction of the court;

   d.   has been substantially diminished in value; or

   e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c).

ROBERT O. POSEY
ACTING UNITED STATES ATTORNEY


*/s/ George A. Martin, Jr.*
GEORGE A. MARTIN, JR.
Assistant United States Attorney


*/s/ Robin B. Mark*
ROBIN B. MARK
Assistant United States Attorney

30