FILED

2017 Jun-22  PM 12:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **OLIVER L. ROBINSON, JR.** | ) |

## PLEA AGREEMENT

The Government and defendant **OLIVER L. ROBINSON, JR.,** hereby acknowledge the following plea agreement in this case:

### PLEA

The defendant agrees to (i) plead guilty to **COUNTS ONE through SEVEN** of the Information filed in the above numbered and captioned matter; (ii) agree not to seek or hold any federal, state or local elected position of any kind; (iii) pay restitution on the conspiracy, bribery, and fraud counts in the amount and to the victims determined by the Court at sentencing; (iv) pay full restitution for taxes due and owing for tax years 2011 through 2015 as set forth in paragraph XIV of this Plea Agreement; and (v) agree to the entry of a forfeiture judgment in an amount of no more than $767,783.00.   In exchange, the United States Attorney, acting on

Page  1  of   43        Defendant's Initials

behalf of the Government and through the undersigned Assistant United States Attorney, agrees to move to recommend the disposition specified below, subject to the conditions in paragraphs **IX** and **X**.

## TERMS OF THE AGREEMENT

## I. MAXIMUM PUNISHMENT

The defendant understands that the maximum statutory punishment that may be imposed for each count charging the crime of conspiracy, in violation of Title 18, United States Code, Section 371, as charged in COUNT ONE, is:

     a.    Imprisonment for not more than 5 years;

     b.    A fine of not more than $250,000.00, or

     c.    Both (a and b);

     d.    Supervised release of not more than 3 years; and

     e.    Special Assessment Fee of $100 per count.

The defendant understands that the maximum statutory punishment that may be imposed for each count charging the crime of bribery, in violation of Title 18, United States Code, Section 666(a)(1)(B), as charged in COUNT TWO, is:

     a.    Imprisonment for not more than 10 years;

     b.    A fine of not more than $250,000.00; or

     c.    Both (a and b);

Defendant's Initials

    d.      Supervised release of not more than 3 years; and

    e.      Special Assessment Fee of $100 per count.

The defendant understands that the maximum statutory punishment that may be imposed for each count charging the crime of wire fraud, in violation of Title 18, United States Code, Sections 1343, as charged in COUNTS THREE through SIX, is:

    a.      Imprisonment for not more than 20 years;

    b.      A fine of not more than $250,000.00; or

    c.      Both (a and b);

    d.      Supervised release of not more than 3 years; and

    e.      Special Assessment Fee of $100 per count.

The defendant understands that the maximum statutory punishment that may be imposed for each count charging the crime of tax evasion, in violation of Title 26, United States Code, Section 7201, as charged in COUNT SEVEN, is:

    a.      Imprisonment for not more than 5 years;

    b.      A fine of not more than $100,000.00, together with the costs of prosecution; or

    c.      Both (a and b);

Defendant's Initials

d.      Supervised release of not more than 3 years; and

e.      Special Assessment Fee of $100 per count.

## II. FACTUAL BASIS FOR PLEA

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

### Oliver L. Robinson, Jr., and his Entities

Defendant **OLIVER L. ROBINSON, JR.,** was a member of the Alabama House of Representatives from 1998 until his resignation on or about November 30, 2016.   He represented District 58 and served as Vice-Chairman of the Jefferson County Legislative Delegation.     Defendant **OLIVER L. ROBINSON, JR.,** was an agent of the State of Alabama, a state government that received in excess of $10,000.00 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance during each year material to this Information.

Based on his position as a member of the Alabama House of Representatives, defendant **OLIVER L. ROBINSON, JR.,** owed a duty of loyalty and honesty to the State of Alabama and its citizens, free from deceit, self-enrichment, concealment, and conflicts of interests between his private interests and the official responsibilities inherent in his office of public trust.

Page  4  of   43          Defendant's Initials

To finance his campaigns for office, defendant **OLIVER L. ROBINSON, JR.,** solicited and accepted contributions from individuals, corporations, and political action committees.   The campaign contributions to defendant **OLIVER L. ROBINSON, JR.,** could not lawfully be converted by him to personal use.   He controlled the bank accounts into which campaign contributions were deposited.

In or about August 2004, defendant **OLIVER L. ROBINSON, JR.,** established the Oliver Robinson Foundation and served as its President.   The stated purpose of the Oliver Robinson Foundation was to raise funds to advance financial literacy among students at high schools and Historically Black Colleges and Universities through publications and presentations.   Defendant **OLIVER L. ROBINSON, JR.,** used the Oliver Robinson Foundation to raise money to fund an annual Black Achievers Awards Gala in Birmingham, Alabama, and to publish a magazine called The Community Reinvestor Magazine.   In or about March 2005, the Oliver Robinson Foundation's application for tax-exempt status under section 501(c)(3) of the Internal Revenue Code was approved.   Defendant **OLIVER L. ROBINSON, JR.,** controlled the bank account opened in the name of the Oliver Robinson Foundation.

Defendant **OLIVER L. ROBINSON, JR.,** also founded Robinson & Robinson Communications, LLC. in or about 2001 and served as its President.

This entity was formed to "produce, record, promote, market, and sell compact discs and cassette tapes."  Defendant **OLIVER L. ROBINSON, JR.,** controlled the bank account opened in the name of this business.

Partnering for Progress was an entity established in 2009 by defendant **OLIVER L. ROBINSON, JR.,** and another individual to organize an annual business conference.  Defendant **OLIVER L. ROBINSON, JR.,** and others asked corporations to sponsor the conferences by contributing money to Partnering for Progress.  Defendant **OLIVER L. ROBINSON, JR.,** continued to control a Partnering for Progress bank account despite having his name removed as an authorized signatory on the account in 2009.

## Environmental Issues in North Birmingham

The United States Environmental Protection Agency ("EPA") is the federal agency charged with the mission of ensuring that all Americans are protected from significant risks to the environment and human health where they live, learn, and work.  EPA designated an area of north Birmingham, Alabama, including the neighborhoods of Harriman Park, Fairmont, and Collegeville, as the 35th Avenue Superfund Site based on elevated levels of arsenic, lead, and benzo(a)pyrene found during soil sampling.  In September 2013, EPA sent general notice letters to five companies potentially responsible for the pollution in north Birmingham, including

Defendant's Initials

ABC Coke, a division of Drummond Company.   A company determined to be responsible for pollution within the 35th Avenue Superfund Site could have faced tens of millions of dollars in cleanup costs and fines.

In July 2014, EPA began considering a petition filed by GASP, a Birmingham, Alabama, environmental advocacy group, to expand the 35th Avenue Superfund Site into the Tarrant and Inglenook areas of north Birmingham and to conduct a preliminary assessment of pollutants allegedly deposited there by ABC Coke and others.   On October 9, 2014, EPA granted the petition and contracted with the Alabama Department of Environmental Management ("ADEM") to perform the preliminary assessment.

ADEM is the state agency responsible for the implementation of environmental programs and policies, including administering federally approved or delegated environmental programs.   It receives substantial funding from the federal government and is included in the State of Alabama's annual general fund budget approved by the legislature and Governor.   The Alabama Environmental Management Commission ("AEMC") is the state commission responsible for developing environmental policy for the State of Alabama, selecting the ADEM Director, and advising the ADEM Director on environmental matters.   AEMC holds periodic public meetings and, among other matters, considers comments from

Defendant's Initials

interested parties on issues involving the State of Alabama's environmental policy.

In September 2014, EPA proposed adding the 35th Avenue Superfund Site to the National Priorities List, a list of the nation's Superfund Sites requiring priority attention.  Placement on the National Priority List would have allowed EPA to use the federal Superfund Trust Fund to conduct long-term remedial actions at the 35th Avenue Superfund Site provided the State of Alabama agreed to fund ten percent of the costs incurred during cleanup of the site.  The contribution required from the State of Alabama would have totaled millions of dollars.  A listing on the National Priorities List would have allowed cleanup of the Site to proceed even if EPA was unable to persuade or compel a potentially responsible party to conduct or fund the cleanup.  EPA could attempt later to recover money spent by the federal and state governments as part of the cleanup from companies determined to be responsible parties through negotiation and/or litigation.

The Governor of Alabama designated ADEM as the State of Alabama's representative on issues concerning the potential listing of the 35th Avenue Superfund Site on the National Priorities List and the expansion of the 35th Avenue Superfund Site into the Tarrant and Inglenook communities.

EPA held a public comment period on the proposed listing of the 35th Avenue Superfund Site on the National Priorities List from September 22, 2014, to

Defendant's Initials

January 22, 2015.   In January 2015, ADEM, acting on behalf of the State of Alabama, requested that EPA's proposal be withdrawn and no further action taken until issues raised by the State could be resolved.   ADEM stated that if the issues could not be resolved the State of Alabama would request review pursuant to EPA's formal issue resolution process.   After considering all comments, if EPA concluded that the 35th Avenue Superfund Site qualified for listing on the National Priorities List, EPA would consult with ADEM and, if necessary, follow the formal issue resolution process prior to making a final decision.   EPA's review of the proposed listing on the National Priorities List continued into 2016.

Drummond Company and ABC Coke were represented by Balch & Bingham, a Birmingham, Alabama, law firm, in relation to EPA's actions in north Birmingham.   Attorney #1 was a Balch & Bingham partner coordinating the response to EPA's actions on behalf of ABC Coke and Drummond Company. Drummond Employee #1 was a Drummond Company employee involved with Attorney #1 in responding to EPA.   Both Attorney #1 and Drummond Employee #1 were registered with the State of Alabama as lobbyists.

Beginning in or about 2014, and continuing until at least November 2016, the strategy employed by Attorney #1 and Drummond Employee #1 focused on protecting ABC Coke and Drummond Company from the tremendous potential

costs associated with being held responsible for pollution within the affected areas.
They sought to accomplish this goal by working to prevent EPA from listing the
35th Avenue Superfund Site on the National Priorities List and expanding the
Superfund Site into Tarrant and Inglenook.   The plan included advising residents
of north Birmingham and public officials to oppose EPA's actions.   As part of the
overall strategy, Balch & Bingham paid defendant **OLIVER L. ROBINSON, JR.,**
through his foundation, to represent Balch & Bingham's and its clients' interests
exclusively in matters related to EPA's actions in north Birmingham.   One of
defendant **OLIVER L. ROBINSON, JR.'s,** first tasks in furtherance of this
strategy was to appear before AEMC and the ADEM Director to advance the
opposition of Balch & Bingham and its clients to EPA's actions in north
Birmingham.

In 2015, Attorney #1 and Drummond Employee #1 formed a tax-exempt
corporation named Alliance for Jobs and the Economy and recruited corporations to
contribute money to the Alliance for Jobs and the Economy to help fund opposition
to EPA's actions in north Birmingham.   Drummond Company and several other
corporations contributed money to the Alliance for Jobs and the Economy at the
request of Attorney #1 and Drummond Employee #1.   Drummond Employee #1
opened and controlled a bank account in the name of the Alliance for Jobs and the

Economy.

## Conspiracy to Commit Bribery and Honest Service Fraud

From in or about November 2014, and continuing until in or about November 2016, the exact dates being unknown, within Jefferson County in the Northern District of Alabama, and elsewhere, defendant **OLIVER L. ROBINSON, JR.,** knowingly and willfully conspired, combined, and agreed with Attorney #1, Drummond Employee #1, and others known and unknown to commit the federal offenses of bribery and honest services wire fraud.

It was a part of the conspiracy that defendant **OLIVER L. ROBINSON, JR.,** Attorney #1, and Drummond Employee #1 would and did agree that defendant **OLIVER L. ROBINSON, JR.,** would be paid, through the Oliver Robinson Foundation, to represent Balch & Bingham's and its clients' interests exclusively in relation to the environmental issues in north Birmingham despite defendant **OLIVER L. ROBINSON, JR.'s** duty to honestly, openly, and fairly represent the State of Alabama and the citizens and residents of Birmingham.

It was a further part of the conspiracy that defendant **OLIVER L. ROBINSON, JR.,** Attorney #1, and Drummond Employee #1 would and did agree that defendant **OLIVER L. ROBINSON, JR.,** would be paid, through the Oliver Robinson Foundation, to use his position as a member of the Alabama House of

Defendant's Initials _____

Representatives, Vice-Chairman of the Jefferson County Legislative Delegation, and elected representative of citizens of Birmingham to pressure and advise public officials to oppose EPA's actions in north Birmingham.

It was a further part of the conspiracy that defendant **OLIVER L. ROBINSON, JR.,** Attorney #1, and Drummond Employee #1 would and did agree that defendant **OLIVER L. ROBINSON, JR.,** would appear before AEMC on February 20, 2015, to advance the opposition of Balch & Bingham and its clients to EPA's actions in north Birmingham by using his official position to pressure and advise AEMC and the ADEM Director to take and maintain a position on behalf of the State of Alabama favorable to Balch and Bingham and its clients in relation to EPA's efforts to list the 35th Avenue Superfund Site on the National Priorities List and expand the Superfund Site into Tarrant and Inglenook.

It was a further part of the conspiracy that Attorney #1 would and did write letters that defendant **OLIVER L. ROBINSON, JR.,** would and did print verbatim on his official Alabama House of Representatives letterhead and sign before delivering to members of the AEMC and ADEM Director.

It was a further part of the conspiracy that Attorney #1 would and did offer, and defendant **OLIVER L. ROBINSON, JR.,** would and did accept, a contract between Balch & Bingham and the Oliver Robinson Foundation to influence and

Defendant's Initials

reward defendant **OLIVER L. ROBINSON, JR.,** in connection with the use of his position as a member of the Alabama House of Representatives in support of Balch & Bingham's and its clients' opposition to EPA's actions in north Birmingham.

It was a further part of the conspiracy that, four days prior to defendant **OLIVER L. ROBINSON, JR.'S,** appearance before AEMC in February 2015, he and Attorney #1 would and did sign the contract between the Oliver Robinson Foundation and Balch & Bingham.

It was a further part of the conspiracy that the Oliver Robinson Foundation would and did submit invoices each month to Balch & Bingham under the contract and the law firm would pay those invoices.

It was a further part of the conspiracy that Balch & Bingham would and did submit invoices to Drummond Company and the Alliance for Jobs and the Economy in identical amounts Balch & Bingham paid to the Oliver Robinson Foundation.   Drummond Employee #1 would cause either Drummond Company or the Alliance for Jobs and the Economy to send payment to Balch & Bingham on those invoices.   All of the money contributed to the Alliance for Jobs and the Economy was used by Drummond Employee #1 to pay Balch & Bingham on the invoices related to the Oliver Robinson Foundation.

Defendant's Initials _____

It was a further part of the conspiracy that, eight days prior to the AEMC meeting in February 2015, Balch & Bingham would and did pay the Oliver Robinson Foundation $14,000.00 as the first payment under the contract.

It was a further part of the conspiracy that, on the same day it paid $14,000.00 to the Oliver Robinson Foundation, Balch & Bingham would and did send an invoice in an identical amount to Drummond Company, which Drummond Company promptly paid.

It was a further part of the conspiracy that Balch & Bingham, Drummond Company, and the Alliance for Jobs and the Economy would and did pay the Oliver Robinson Foundation a total of approximately $360,000.00 under the contract during 2015 and 2016.

In furtherance of the conspiracy and to achieve the objects thereof, the conspirators committed and caused to be committed the following overt acts, among others, in the Northern District of Alabama and elsewhere:

In or about November 2014, Attorney #1 and Drummond Employee #1 engaged in discussions with defendant **OLIVER L. ROBINSON, JR.,** regarding a contract between Balch & Bingham and one of defendant **OLIVER L. ROBINSON, JR.'s** organizations.   The conspirators discussed that defendant **OLIVER L. ROBINSON, JR.,** would appear before the AEMC to advance Balch

& Bingham's and its clients' opposition to EPA's proposed actions by advising the AEMC to take a position favorable to Balch & Bingham and its clients.   Defendant **OLIVER L. ROBINSON, JR.,** subsequently (in February 2015) agreed to appear before the AEMC as requested.

On or about December 11, 2014, defendant **OLIVER L. ROBINSON, JR.,** sent an email to Attorney #1 stating: "[Attorney #1] go back to [Drummond Employee #1] and the Drummond people and let them know that we will need $7000 per month."   Attorney #1 forwarded this email to Drummond Employee #1.

On or about December 12, 2014, defendant **OLIVER L. ROBINSON, JR.,** met with representatives of EPA to discuss issues related to north Birmingham. Attorney #1 provided defendant **OLIVER L. ROBINSON, JR.,** a list of talking points consistent with Balch & Bingham's and its clients' position to guide the meeting and instructed him to secretly record the meeting.   Defendant **OLIVER L. ROBINSON, JR.,** did not reveal to EPA that he was in contract negotiations with Balch & Bingham to represent Balch & Bingham's and its clients' interests in relation to the environmental issues in north Birmingham that were the subject of the meeting.

On or about December 23, 2014, defendant **OLIVER L. ROBINSON, JR.,** met with representatives of GASP to discuss issues related to north Birmingham.

Defendant's Initials _OLR_

Attorney #1 provided defendant **OLIVER L. ROBINSON, JR.,** a list of talking points consistent with Balch & Bingham's and its clients' position to guide the meeting and instructed him to secretly record the meeting.   Defendant **OLIVER L. ROBINSON, JR.,** did not reveal to GASP that he was in contract negotiations with Balch & Bingham to represent Balch & Bingham's and its clients' interests in relation to the environmental issues in north Birmingham that were the subject of the meeting.

On or about February 6, 2015, Attorney #1 approved a letter he instructed an associate to write for defendant **OLIVER L. ROBINSON, JR.,** to sign requesting permission from the AEMC Chairman for defendant **OLIVER L. ROBINSON, JR.,** to appear before the regularly scheduled Commission meeting on February 20, 2015, "on behalf of the concerned citizens working and residing in North Birmingham."   The letter stated: "As a state legislator and representative of a district adjacent to the North Birmingham superfund site, it is my duty to ensure that the North Birmingham community is adequately represented to relevant State organizations such as AEMC.   The health and general welfare of our community depends, in large part, on AEMC's continued willingness to hear and actively engage in matters that are critically important to them.   The NPL proposal is one such matter."   The letter did not reveal to AEMC that the Oliver Robinson

Foundation was being paid to represent the exclusive interests of Balch & Bingham and its clients.   After defendant **OLIVER L. ROBINSON, JR.,** printed the letter on his official Alabama House of Representatives letterhead and signed it, he had it delivered to the AEMC Chairman.

On February 6, 2015, Attorney #1 forwarded a draft of this letter to Drummond Employee #1 in an email that stated: "[Drummond Employee #1] – met with Oliver.   He has agreed to submit the request to AEMC today to meet the deadline.   However, he said he needed to think about the politics of it before he would commit to providing comments to the AEMC.   I told him I understood and he could always withdraw the request should he decide not to do it.   Maybe helpful if you followed up with him on this issue.   Thanks."

On or about February 12, 2015, Balch & Bingham paid the Oliver Robinson Foundation $14,000.00.   On or about that same day, Balch & Bingham sent an invoice in an identical amount to Drummond Company.   Defendant **OLIVER L. ROBINSON, JR.,** caused an interstate wire transmission when he deposited this check into the Oliver Robinson Foundation account at Regions Bank.

On or about February 16, 2015, four days before the AEMC meeting, and four days after the first payment, Attorney #1 and defendant **OLIVER L. ROBINSON, JR.,** signed a contract between Balch & Bingham and the Oliver

Robinson Foundation.   The contract, which was written and approved by Attorney #1, provided that the Oliver Robinson Foundation could not "directly or indirectly engage or be concerned or interested in any business or activity which conflicts with its services to Balch or otherwise conflicts with the interests of Balch as determined solely by Balch."   The contract stated that the effective date of the contract was December 1, 2014.

On or about February 17, 2015, Drummond Company paid Balch & Bingham $14,000.00, the identical amount Balch & Bingham paid to the Oliver Robinson Foundation.

In or about February 2015, defendant **OLIVER L. ROBINSON, JR.,** agreed with Attorney #1 and Drummond Employee #1 to meet with two members of the AEMC prior to his appearance before the full Commission.

On February 20, 2015, defendant **OLIVER L. ROBINSON, JR.,** appeared before the AEMC "to protect the residents of north Birmingham."   He told AEMC that calls from constituents led him, "as the vice chairman of the Jefferson County House delegation, to do some research on the Superfund designations and the NPL listings and to look at the North Birmingham 35th Avenue area location with some fervor."   He advised further that he had "yet to see any information that shows me that this area should be designated as a Superfund site, not to mention being put on

the NPL listing."   After stating that he was "really here today to try to protect the residents of north Birmingham," defendant **OLIVER L. ROBINSON, JR.,** advised that "the thing that gets me and what is in the process of hurting the residents in that area is that the EPA has included five other corporations in on this process, but there have been no reports stating that these individuals are culpable in any way. And where that hurts the residents is the fact that we will have decades of litigation that will occur because of these five companies being added."   He asked the AEMC to help narrow the list of potentially responsible parties if there were no reports or tests implicating the corporations.   Concluding, defendant **OLIVER L. ROBINSON, JR.,** advised AEMC that if the areas of north Birmingham are designated as a Superfund site or listed on the NPL, the residents are "considered to live in a dump and nothing can happen there until it's either cleaned up and after that, it will take tremendous investment to get it to move forward."   Defendant **OLIVER L. ROBINSON, JR.,** concealed from AEMC that the Oliver Robinson Foundation was being paid to represent the exclusive interests of Balch & Bingham and its clients.   The ADEM Director, who was present during the AEMC meeting, later cited to senior EPA officials defendant **OLIVER L. ROBINSON, JR.'s,** public opposition to the listing of the 35th Avenue Superfund Site on the National Priorities List.

On or about March 4, 2015, Attorney #1 wrote a second letter for defendant **OLIVER L. ROBINSON, JR.,** to sign requesting information from the ADEM Director so that defendant **OLIVER L. ROBINSON, JR.,** could "better serve my constituents." This letter was delivered to the ADEM Director and each member of the AEMC after defendant **OLIVER L. ROBINSON, JR.,** printed it on his official Alabama House of Representatives letterhead and signed it. Neither defendant **OLIVER L. ROBINSON, JR.,** nor Attorney #1 revealed that the Oliver Robinson Foundation was being paid to represent the exclusive interests of Balch & Bingham and its clients.

In or about May 2015, Attorney #1 wrote a Joint Resolution for consideration by the Alabama Senate and Alabama House of Representatives urging "the Attorney General and ADEM to combat the EPA's overreach." After the resolution was submitted to and adopted by the Alabama Senate, defendant **OLIVER L. ROBINSON, JR.,** then a member of the Alabama House of Representatives' Rules Committee, voted in committee to send the resolution to the floor of the House of Representatives for consideration by the membership of the House.

During 2015 and 2016, pursuant to the contract between Balch & Bingham and the Oliver Robinson Foundation, defendant **OLIVER L. ROBINSON, JR.,**

Page 20 of 43          Defendant's Initials _____

through other individuals, communicated Balch & Bingham's and its clients' opposition to EPA's actions to the residents of north Birmingham as directed by Attorney #1 and Drummond Employee #1.   The Oliver Robinson Foundation communicated with the residents through an organization formed for that purpose called Get Smart Tarrant.

### Fraud Related to Campaign Account

From in or about January 2010, and continuing to in or about December 2015, the exact dates being unknown, within Jefferson County in the Northern District of Alabama, and elsewhere, defendant **OLIVER L. ROBINSON, JR.,** devised and intended to devise a scheme and artifice to defraud contributors to his campaigns, and to obtain money and property belonging to contributors to his campaigns, by means of materially false and fraudulent pretenses, representations, and promises.

It was a part of the scheme and artifice that defendant **OLIVER L. ROBINSON, JR.,** would and did solicit contributions to his campaigns from individuals, corporations, and political action committees by representing that all contributions would be used for lawful purposes associated with his campaigns for election to the Alabama House of Representatives.

Defendant's Initials _____

It was a further part of the scheme and artifice that defendant **OLIVER L. ROBINSON, JR.,** would and did accept campaign contributions from individuals, corporations, and political action committees and deposit those funds into accounts he controlled at Regions Bank.

It was a further part of the scheme and artifice that defendant **OLIVER L. ROBINSON, JR.,** would and did spend approximately $17,783.00 of campaign contributions on personal items unrelated to his campaigns for public office.

Defendant **OLIVER L. ROBINSON, JR.,** caused an interstate communication in furtherance of this scheme when he used a debit card associated with one of his campaign accounts to make each purchase described below:

| COUNT | DATE OF PURCHASE | MERCHANT | AMOUNT |
|---|---|---|---|
| 4 | December 23, 2013 | Saks Fifth Avenue | $2,024.00 |
| 5 | February 11, 2014 | Victoria's Secret | $400.00 |

**Fraud Related to Partnering for Progress and Oliver Robinson Foundation**

From in or about January 2010, and continuing to in or about December 2016, the exact dates being unknown, within Jefferson County in the Northern District of Alabama, and elsewhere, defendant **OLIVER L. ROBINSON, JR.,** aided and abetted by others known and unknown, devised and intended to devise a

scheme and artifice to defraud various corporations, and to obtain money and property belonging to those corporations, by means of materially false and fraudulent pretenses, representations, and promises.

It was a part of the scheme and artifice that defendant **OLIVER L. ROBINSON, JR.,** and others would and did solicit money from corporations by representing that all contributions would be used to publish The Community Reinvestor Magazine, or to defray costs associated with the annual Partnering for Progress Business Conference or the annual Alabama Black Achievers Awards Gala sponsored by the Oliver Robinson Foundation.

It was a further part of the scheme and artifice that defendant **OLIVER L. ROBINSON, JR.,** and others would and did accept hundreds of thousands of dollars in contributions from corporations for the magazine and these events and deposit those funds into various bank accounts he controlled.

It was a further part of the scheme and artifice that defendant **OLIVER L. ROBINSON, JR.,** would and did spend at least $250,000.00 of the contributions on personal items unrelated to the magazine, business conferences or galas and conceal his personal spending from contributors.   Defendant **OLIVER L. ROBINSON, JR.,** would often accomplish this scheme by purchasing personal items and services using an American Express or Chase Bank credit card and then

paying the credit card bills with money contributed to Partnering for Progress and the Oliver Robinson Foundation for the magazine, business conferences, and galas.

Defendant **OLIVER L. ROBINSON, JR.,** caused an interstate communication between Alabama and another state when he transferred funds from the Oliver Robinson Foundation bank account to make an online payment of $5,714.54 to Chase Bank.

<u>**Tax Evasion**</u>

Defendant **OLIVER L. ROBINSON, JR.,** submitted a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for each of the tax years 2011 through 2015 because he failed to include all personal spending from the campaign, Partnering for Progress, Oliver Robinson Foundation, and Robinson & Robinson bank accounts as income on the returns and pay tax thereon.   Defendant **OLIVER L. ROBINSON, JR.,** concealed this income, and attempted to evade and defeat the payment of taxes, by committing the following acts of evasion, among others: preparing and causing to be prepared, and signing and causing to be signed, false and fraudulent U.S. Individual Income Tax Returns, Form 1040, which were submitted to the Internal Revenue Service; failing to provide complete and accurate records to his return preparer; transferring funds among multiple accounts to conceal that the funds were subject to income tax; directing payments be made to

the Oliver Robinson Foundation, a non-profit entity, rather than to Robinson &

Robinson or himself personally; and continuing to exercise authority over and use a

Partnering for Progress bank account after removing himself as an authorized

signatory.   The amount of tax due and owing for each of these tax years is

estimated to be as follows:

| TAX YEAR | TAX DEFICIENCY |
|----------|----------------|
| 2011 | $9,165 |
| 2012 | $17,816 |
| 2013 | $23,150 |
| 2014 | $33,718 |
| 2015 | $114,429 |
| **TOTAL** | $198,278 |

**The defendant hereby stipulates that the facts stated above are**

**substantially correct and that the Court can use these facts in calculating the**

**defendant's sentence.   The defendant further acknowledges that these facts do**

Defendant's Initials

not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.

_____
OLIVER L. ROBINSON, JR.

## III. COOPERATION BY DEFENDANT:

The defendant agrees to waive the Fifth Amendment privilege against self-incrimination and to provide **TRUTHFUL AND COMPLETE INFORMATION** to the government concerning all aspects of the charged crimes, including, but not limited to, the defendant's role and participation in the offenses, as well as the roles and the participation of all other persons involved in these crimes of whom the defendant has knowledge. The defendant agrees to testify against all of those individuals at any time requested by the government, including at any Grand Jury proceeding, forfeiture proceeding, bond hearing, pretrial hearing, trial, retrial, or post-trial hearing.   **ALL SUCH INFORMATION AND TESTIMONY SHALL BE TRUTHFUL AND HONEST AND WITH NO KNOWING MATERIAL FALSE STATEMENTS OR OMISSIONS.**

Further, the defendant agrees to provide assistance and cooperation to the government as defined and directed by any other investigative agency or body as

the United States Attorney for the Northern District of Alabama may authorize, which cooperation may include the defendant's periodic submission to a polygraph examination to determine the truthfulness and accuracy of the defendant's statements and information.

## IV.   MOTION PURSUANT TO USSG § 5K1.1 AND/OR 18 U.S.C. § 3553(e):

In the event the defendant provides assistance that rises to the level of "substantial assistance," as that term is used in USSG § 5K1.1, the government agrees to file a motion requesting a downward departure in the calculation of the defendant's advisory guideline sentence.   Should any of the counts of conviction subject the defendant to a mandatory minimum sentence, the government may also seek a sentence reduction below said mandatory minimum sentence, by including in its motion a recommendation pursuant to the provisions of 18 U.S.C. § 3553(e). The defendant agrees that the determination of whether defendant's conduct rises to the level of "substantial assistance" and/or whether defendant's conduct merits consideration under 18 U.S.C. § 3553(e) lies solely in the discretion of the United States Attorney's Office.   Furthermore, the defendant agrees that the decision as to the degree or extent of the downward departure requested, if any, also lies in the sole discretion of the United States Attorney's Office.

Any motion pursuant to 5K1.1 and/or 18 U.S.C. § 3553(e) will be filed

before the defendant's sentencing hearing and will outline all material assistance which the defendant has provided. The defendant clearly understands and acknowledges that because the defendant's plea is being offered in accordance with Rule 11(c)(1)(B), Fed.R.Crim.P., the Court will not be bound by the government's recommendation and may choose not to reduce the sentence at all.

## V.   <u>RECOMMENDED SENTENCE</u>

Subject to the limitations in paragraph X regarding subsequent conduct and pursuant to Rule 11(c)(1)(B), Fed.R.Crim.P., the government, **in the absence of "substantial assistance"** by the defendant, will recommend the following disposition:

      (a)    That the defendant be awarded an appropriate reduction in offense level for acceptance of responsibility;

      (b)    That the defendant be sentenced to a term of imprisonment within the advisory United States Sentencing Guideline range as that is determined by the court on the date that the sentence is pronounced;

      (c)    That following any term of imprisonment, the defendant be placed on supervised release for a period to be determined by the court, subject to the standard conditions of supervised

Defendant's Initials _____

release as set forth in U.S.S.G. § 5D1.3 and any additional

conditions recommended by United States Probation;

(d)  That the defendant pay restitution on the conspiracy, bribery,

and fraud counts in the amount and to the victims determined by

the Court at sentencing;

(e)  That the defendant pay full restitution for taxes due and owing

for tax years 2011 through 2015 as set forth in paragraph XIV of

this Plea Agreement;

(f)  That the court enter a forfeiture judgment in an amount no more

than $767,783.00; and

(g)  That the defendant pay a special assessment fee of

$100 per count, said amount due and owing as of the date

sentence is pronounced.

## VI.  WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF

In consideration of the recommended disposition of this case, I, OLIVER

L. ROBINSON, JR., hereby waive and give up my right to appeal my

conviction and/or sentence in this case, as well as any fines, restitution, and

forfeiture orders, the court might impose.   Further, I waive and give up the

Defendant's Initials _____

right to challenge my conviction and/or sentence, any fines, restitution,
forfeiture orders imposed or the manner in which my conviction and/or
sentence, any fines, restitution, and forfeiture orders were determined in any
post-conviction proceeding, including, but not limited to, a motion brought
under 28 U.S.C. § 2255.

The defendant reserves the right to contest in an appeal or
post-conviction proceeding the following:

    (a)    Any sentence imposed in excess of the applicable statutory
             maximum sentence(s);

    (b)    Any sentence imposed in excess of the guideline sentencing
             range determined by the court at the time sentence is
             imposed; and

    (c)    Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the
defendant discussed the Federal Sentencing Guidelines and their application
to the defendant's case with the defendant's attorney, who explained them to
the defendant's satisfaction.   The defendant further acknowledges and
understands that the government retains its right to appeal where authorized
by statute.

Defendant's Initials _____

**I, OLIVER L. ROBINSON, JR.,** hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

_____

**OLIVER L. ROBINSON, JR.**

## VII.   UNITED STATES SENTENCING GUIDELINES

Defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in United States v. Booker, the federal sentencing guidelines are advisory in nature.   Sentencing is in the court's discretion and is no longer required to be within the guideline range.   The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VIII.   AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence

Page 31 of  43          Defendant's Initials _____

recommended by the government is **NOT BINDING UPON THE COURT,** and

that the Court is not required to accept the government's recommendation.   Further,

the defendant understands that if the Court does not accept the government's

recommendation, the defendant does not have the right to withdraw the guilty plea.

## IX. <u>VOIDING OF AGREEMENT</u>

The defendant understands that should the defendant move the Court to

accept the defendant's plea of guilty in accordance with, or pursuant to, the

provisions of <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970), or tender a plea of *nolo*

*contendere* to the charges, this agreement will become NULL and VOID.   In that

event, the Government will not be bound by any of the terms, conditions, or

recommendations, express or implied, which are contained herein.

## X.   <u>SUBSEQUENT CONDUCT</u>

The defendant understands that should the defendant violate any condition of

pretrial release or violate any federal, state, or local law, or should the defendant say

or do something that is inconsistent with acceptance of responsibility, the United

States will no longer be bound by its obligation to make the recommendations set

forth in paragraphs IV and V of the Agreement, but instead, may make any

recommendation deemed appropriate by the United States Attorney in her sole

discretion.

Defendant's Initials

## XI.  OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## XII.  COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.   The defendant also will promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs.   The defendant also agrees that the defendant's financial statement and disclosures will be complete, accurate, and truthful.   Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

Defendant's Initials 

## XIII. AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts.   The defendant understands and agrees that any relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines.   The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct.   This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors which may constitute or relate to relevant conduct.   Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any.

## XIV. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

Defendant agrees to pay restitution to the Internal Revenue Service in the total amount of no more than $198,278.00, pursuant to 18 U.S.C. § 3663(a)(3). Defendant understands and agrees that this figure does not include interest under 26 U.S.C. § 6601, which will be assessed by the IRS pursuant to Title 26.

Defendant agrees that the total amount of restitution reflected in this agreement results from Defendant's fraudulent conduct, and consists of the following estimated tax deficiencies:

| TAX YEAR | TAX DEFICIENCY |
|---|---|
| 2011 | $9,165 |
| 2012 | $17,816 |
| 2013 | $23,150 |
| 2014 | $33,718 |
| 2015 | $114,429 |
| **TOTAL** | $198,278 |

Defendant's Initials _____

Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, Defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). Defendant does not have the right to challenge the amount of this restitution-based assessment. See 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor Defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment. Interest on the restitution-based assessment will accrue under 26 U.S.C. § 6601 from the last date prescribed for payment of the tax liability that is the subject of the restitution-based assessment to the date that the IRS receives full payment.

Defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same

Page 36 of  43          Defendant's Initials ___

periods for which restitution was ordered. Defendant understands and agrees that the plea agreement does not resolve the Defendant's civil tax liabilities, that the IRS may seek additional taxes, interest and penalties from Defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise Defendant's obligation to pay any remaining civil tax liability. Defendant authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments.

Defendant understands that he is not entitled to credit with the IRS for any payment until the payment is received by the IRS.

If full payment cannot be made immediately, Defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office. Defendant also agrees to provide the above-described information to the probation office.

Defendant's Initials

If Defendant makes a payment of the restitution agreed to herein prior to sentencing, the payment will be applied as a credit against the restitution ordered by the Court.

Defendant agrees to send all payments made pursuant to the court's restitution order to the Clerk of the Court.

With each payment to the Clerk of the Court made pursuant to the District Court's restitution order, defendant will provide the following information: (A) Defendant's name and Social Security number; (B) the District Court and the docket number assigned to this case; (C) tax year(s) or period(s) for which restitution has been ordered; and (D) a statement that the payment is being submitted pursuant to the District Court's restitution order.

Defendant agrees to include a request that the Clerk of the Court send the information, along with Defendant's payments, to the IRS address below:

IRS - RACS
Attn: Mail Stop 6261, Restitution
333 W. Pershing Ave.
Kansas City, MO 64108.

Defendant understands and agrees that interest imposed by Title 26 will continue to accrue until the payment is actually received by the IRS.

Page 38 of 43          Defendant's Initials ____

Defendant also agrees to send a notice of any payments made pursuant to this agreement, including the information listed in the previous paragraph, to the IRS at the following address:

IRS - RACS
Attn: Mail Stop 6261, Restitution
333 W. Pershing Ave.
Kansas City, MO 64108.

Based upon his plea of guilty to the offense alleged in COUNTS ONE through SIX of the Information, the defendant consents to the entry of a forfeiture judgment against him in an amount of no more than $767,783.00, and acknowledges that said amount represents the amount of proceeds he obtained directly or indirectly as a result of his criminal offense, pursuant to Fed. R. Crim. P. 32.2(b)(1).   The defendant further acknowledges that, in the event the defendant is unable to pay the forfeiture judgment, the government is authorized under law to seek the forfeiture of any and all assets of the defendant as substitute assets for the purpose of satisfying the forfeiture judgment until same is satisfied in full.   The defendant agrees not to file a claim or petition for remission for any such substitute asset in any judicial proceedings that may be initiated or that have been initiated. The defendant waives any further notice of the forfeiture of any asset covered by this Plea Agreement, agrees to take all steps requested by the United States to pass

Page 39 of  43          Defendant's Initials _____

clear title to the forfeitable assets to the United States, and agrees to testify truthfully in any judicial forfeiture proceeding.

The defendant agrees to waive any Double Jeopardy challenges that he may have to the entry of a Forfeiture Order before sentencing. The defendant agrees to waive any claims, defenses or challenges arising under the Excessive Fines Clause of the Eighth Amendment resulting from the forfeiture imposed as a result of this Information and/or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture.

The defendant hereby waives the requirements of Fed. R. Crim. P. 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this Plea Agreement, and further agrees to not contest or challenge in any manner (including direct appeal, *habeas corpus*, or any other means) such forfeitures on any grounds, including that the forfeiture constitutes double jeopardy, or an excessive fine or punishment.

Defendant recognizes that pleading guilty may have consequences with respect to immigration status if is not a citizen of the United States.   Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty.   Removal and other immigration consequences

are the subject of a separate proceeding, however, and defendant understands that no one, including attorney or the district court, can predict to a certainty the effect of conviction on immigration status.   Defendant nevertheless affirms that wants to plead guilty regardless of any immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

## XV.   DEFENDANT'S UNDERSTANDING

I have read and understand the provisions of this agreement.   I have discussed the case and my constitutional and other rights with my lawyer.   I am satisfied with my lawyer's representation in this case.   I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence.   I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

Page 41 of   43          Defendant's Initials _____

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this Agreement, both individually and as a total binding agreement.

6/6·2017
DATE

OLIVER L. ROBINSON, JR.
Defendant


## XVI. COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses.   My client has conveyed to me that he understands this Agreement and consents to all its terms.   I believe the plea and disposition set forth herein are appropriate under the facts of this case and are

Defendant's Initials _____

in accord with my best judgment.   I concur in the entry of the plea on the terms and
conditions set forth herein.


_____         _____
DATE                                RICHARD S. JAFFE
                                    Defendant's Counsel


6/16/17                             _____
_____         MICHAEL W. WHISONANT, III
DATE                                            JR.
                                    Defendant's Counsel


## XVII. **GOVERNMENT'S ACKNOWLEDGMENT**

I have reviewed this matter and this Agreement and concur that the plea and
disposition set forth herein are appropriate and are in the interests of justice.

                                    ROBERT O. POSEY
                                    Acting United States Attorney


June 22, 2017                       _____
_____         GEORGE A. MARTIN, JR.
DATE                                Assistant United States Attorney


June 22, 2017                       _____
_____         ROBIN B. MARK
DATE                                Assistant United States Attorney


                    Page  43  of   43              Defendant's Initials _____

Revised November 2009